IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BEN ROTEN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ. Act. No. 07-233-JJF |
| | ) | |
| MIKE DELOY, et al., | ) | |
| | ) | |
| Respondents. | ) | |

**ANSWER**

Pursuant to the Rules Governing § 2254 Actions, 28 U.S.C. foll. § 2254, Respondents state the following in response to the petition for writ of habeas corpus:

Facts

Late in the evening of January 6, 2004, and into the early morning hours of January 7, Benny Ray Roten and his girlfriend Billie Downes were at Downes' step-father's trailer north of Millville watching television. Roten told Downes that he intended to sell a guitar that she had purchased for him as a present and use the proceeds to purchase drugs. Downes objected to Roten's plan, telling him that she had saved for a long time to buy that present for him, and if he insisted on selling the guitar to buy drugs, then she was going to leave him. The argument then turned violent and Roten punched Downes in her face. Downes attempted to leave the trailer several times, but Roten dragged her back inside, sometimes by her hair, her throat, and her hindquarters. Each time Roten brought her inside, he inflicted an additional beating, punching her in her face and kicking her about her body. At one point, Roten grabbed a folding knife and made a slashing motion with it. Downes begged for her life. Roten told her that if she tried to

1

leave, he would kill her. Roten eventually beat Downes into unconsciousness. Roten, who was under the influence of drugs during the crime, eventually passed out of himself. At approximately 7:30 in the morning, Downes regained consciousness, found that Roten had passed out, and escaped to her step-father's home.

After contacting police, Downes was transported to Peninsula Regional Medical Center where she underwent surgery. Downes subsequently required additional operations. From Roten's beating of Downes, she suffered, *inter alia*, bruising to her brain and multiple complex facial fractures, including her nose, eye socket, and sinus cavity.

Officers from the Delaware State Police, Bethany Beach police, and Ocean View police all responded to apprehend Roten. Roten did not cooperate with arresting officers when they attempted to place him in handcuffs. Once Roten was in custody in the back of a police cruiser, he repeatedly told officers that he would kill them. Roten remained combative during the booking process at Troop 4.

Procedural History

On January 8, 2004, Delaware State Police arrested Roten. (D.I. 1).[1] On March 29, 2004 the Sussex County grand jury indicted Roten on the following charges: kidnapping in the first degree (11 *Del. C.* § 783A); attempted murder in the first degree (11 *Del. C.* §§ 531 and 636); assault in the first degree (11 *Del. C.* § 611); aggravated menacing (11 *Del. C.* § 602(b)); refusal to submit to photographs and fingerprinting (11 *Del. C.* § 8522); possession of a deadly weapon during the commission of a felony (11 *Del. C.* § 1447); and resisting arrest (11 *Del. C.* § 1257). (D.I. 3). On August 6, 2004,

---

[1] "D.I." references in this section are to the Superior Court Criminal Docket in *State v. Roten*, ID No. 0401005180.

Roten pled guilty to the charges of aggravated menacing and assault in the first degree, in exchange for which the prosecution dismissed the balance of the indictment. (D.I. 11). On September 3, 2004, Roten moved to withdraw his guilty plea. (D.I. 12). On September 24, 2004, Superior Court denied Roten's motion to withdraw his guilty plea. (D.I. 14). Immediately thereafter, Superior Court sentenced Roten as follows: assault in the first degree—25 years at level V; aggravated menacing—5 years at level V, suspended upon the successful completion of the Key Program for decreasing levels of supervision. (D.I. 15). Roten appealed Superior Court's September 24, 2004 orders. On December 29, 2004, Roten, *pro se*, filed a Rule 35 motion for sentence modification. (D.I. 28). On February 28, 2005, Roten, through counsel, filed a Rule 35 motion for sentence modification. (D.I. 36). On March 11, 2005, Superior Court held an evidentiary hearing on remand from the Delaware Supreme Court to consider Roten's motion to represent himself on appeal. (D.I. 38). At this hearing, Roten withdrew his request to represent himself on appeal. *Id*. On April 15, 2005, the Delaware Supreme Court remanded Roten's appeal to Superior Court to permit Superior Court to decide the motion for sentence modification and retained jurisdiction over the appeal. (D.I. 41). On May 19, 2005, Superior Court denied Roten's motion for sentence modification. (D.I. 45). On September 15, 2005, the Delaware Supreme Court affirmed the judgment of Superior Court. *Roten v. State*, 2005 WL 2254202 (Del. Sept. 15, 2005).

On February 27, 2006, Roten filed a motion for post-conviction relief under Criminal Rule 61. (D.I. 51). On May 18, 2006, Superior Court denied Roten's motion for post-conviction relief. *State v. Roten*, 2006 WL 1360513 (Del. Super. Ct. 2006). (D.I. 53). Roten appealed, and on March 15, 2007, the Delaware Supreme Court

3

affirmed the judgment of Superior Court. *Roten v. State*, 2007 WL 773389 (Del. March 17, 2007). Roten then timely filed the instant petition for writ of habeas corpus on April 30, 2007.

## Argument

In his petition, Roten has alleged three grounds for relief: (1) that he was deprived of due process because Superior Court did not grant him an evidentiary hearing before denying his motion to withdraw his guilty plea; (2) that he received ineffective assistance of counsel because his attorney failed to investigate what medications he was taking in prison that may have shown that his guilty plea was involuntary and failed to raise that claim on direct appeal; and (3) that his guilty plea was invalid because Superior Court did not define "drugs" during the plea colloquy. A state prisoner seeking federal habeas relief must first exhaust remedies available in the state courts. 28 U.S.C. § 2254(b); *Castille v. Peoples*, 489 U.S. 346, 351 (1989). In order to demonstrate that a claim has been "exhausted" in state court, a petitioner must show that he presented each claim to the Delaware Supreme Court. *Bailey v. Snyder,* 855 F.Supp. 1392, 1399 (D. Del. 1993). The habeas petitioner must afford each level of the state courts a fair opportunity to address the claims. *Doctor v. Walters,* 96 F.3d 675, 678 (3d Cir. 1993). Liberally reading Roten's claims, it appears that he has presented all three claims to the Delaware Supreme Court, and thus he has exhausted his state remedies. *See Rose v. Lundy*, 455 U.S. 509 (1982); *Smith v. Digmon*, 434 U.S. 332 (1978). After finding that a petitioner has exhausted state remedies, however, this Court "must then assure itself that a habeas petitioner has complied with relevant state procedural requirements before it can delve

4

into the claim of constitutional error in a state conviction." *Bond v. Fulcomer*, 864 F.2d 306, 310 (3d Cir. 1989).

       1. The Delaware Supreme Court's decision that Superior Court's denial of Roten's motion to withdraw his guilty plea did not deprive Roten of due process amounted to a reasonable application of clearly established federal law for purposes of section 2254(d)(1). Roten cannot demonstrate that the Delaware Supreme Court's decision amounted to an unreasonable application of clearly established federal law. Under 28 U.S.C. § 2254(d), a federal court can only issue a writ of habeas corpus if the state court decision being challenged was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "Contrary to … clearly established federal law" means "diametrically different," "opposite in character or nature," or "mutually opposed." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). "Moreover, the state court judgment must not merely be contrary to law as articulated by any federal court. It must contradict 'clearly established' decisions of the United States Supreme Court alone." *Fischetti v. Johnson*, 384 F.3d 140, 147 (3d Cir. 2004). "An unreasonable application of Supreme Court precedent occurs when a state court applies the correct rule to specific facts in an objectively unreasonable way." *Id.* at 148. "Touchstone precedents are not to be examined by looking to broad pronouncements or generative principles in [Supreme Court precedent]." *Id.*

      In considering Roten's argument on direct appeal, the Delaware Supreme Court reviewed Roten's claim for plain error, defined under state law as error that is "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial

5

process." *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986). First, the Delaware Supreme Court found that on appeal, Roten had acknowledged that the only basis for withdrawing his guilty plea was the lack of prejudice to the State and Superior Court's refusal to hold an evidentiary hearing regarding prejudice to the State. The Delaware Supreme Court held that "the trial court did not have to hold an evidentiary hearing to determine that the withdrawal of the guilty plea would cause undue inconvenience to the court."

The United States Supreme Court has most recently addressed the constitutional minima required for a guilty plea in *Bradshaw v. Stumpf*, 545 U.S. 175 (2005). A guilty plea is only valid if made "voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" *Stumpf*, 545 U.S. at 183, *quoting Brady v. United States*, 397 U.S. 742, 748 (1970). As long as the trial court has created a record transcribing the plea colloquy, a defendant who enters a guilty plea will be bound by his answers during his plea colloquy unless he presents clear and convincing evidence otherwise. *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). *See also Boykin v. Alabama*, 395 U.S. 238, 244 (1969). Roten's argument before the Delaware Supreme Court acknowledged that his guilty plea was knowing, voluntary and intelligent, but he argued that it was nonetheless an abuse of the Superior Court's discretion to deny his motion absent a showing of prejudice to the State. Clearly established United States Supreme Court precedent does not require a showing that the State would suffer prejudice when analyzing whether a defendant is entitled to withdraw a guilty plea. Given Roten's concessions on appeal that the trial court conducted a lengthy colloquy with Roten which demonstrated that Roten understood his constitutional

trial rights and that those were being waived through entry of a guilty plea, that Roten understood the nature of the charges and the range of penalties to which he was exposed, that Roten was in fact guilty of the charges, that Roten had discussed the plea with his attorney, that no promises to sentencing or coercion had induced Roten's plea, and that it was Roten's voluntary choice to plead guilty, Roten thereby acknowledged that his plea survived constitutional scrutiny. *See* Appellant's Op. Br., No. 464, 2004, at 5. Thus, the decision of the Delaware Supreme Court that Roten was not entitled to an evidentiary hearing to determine whether the State would have been prejudiced by withdrawal of his guilty plea was not contrary to or an unreasonable application of clearly established United States Supreme Court precedent.

      2. On appeal from the denial of his motion for post-conviction relief, Roten alleged that he received ineffective assistance of counsel because his attorney failed to investigate what medications he was taking in prison that may have shown that his guilty plea was involuntary and failed to raise that claim on direct appeal. Thus, Roten exhausted this issue. The Delaware Supreme Court analyzed Roten's claim under the standard set forth in *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) requiring Roten to show that but for counsel's alleged errors, he would not have pled guilty but rather insisted on proceeding to trial. The Delaware Supreme Court held that Roten had not offered clear and convincing evidence that he should not be bound by his sworn statements during his plea colloquy that he was not coerced into entering the plea and that he was not under the influence of any medications. The Delaware Supreme Court also held that counsel was not ineffective for failing to raise on direct appeal such a non-meritorious issue.

The Delaware Supreme Court's decision that counsel was not ineffective amounted to a reasonable application of clearly established federal law for purposes of section 2254(d)(1). To prevail, Roten had to show that his counsel's representation fell below an objective standard of reasonableness and that, but for counsel's unprofessional errors, there was a reasonable probability that the outcome would have been different— the holding of the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). The Supreme Court, in *Smith v. Robbins*, 528 U.S. 259 (2000), extended the *Strickland* analysis to counsel's failure to advance a particular claim on appeal. Roten cannot satisfy this burden.

To prevail on this claim, Roten must overcome nearly insurmountable barriers. Roten cannot show that the Delaware Supreme Court unreasonably applied *Strickland* given the court's determination that Roten's guilty plea was knowing, intelligent, and voluntary. The habeas petitioner raising a claim that counsel missed an issue on appeal must establish a reasonable probability that he would have prevailed on appeal. *Smith,* 528 U.S. at 287-88; *Duncan v. Morton*, 256 F.3d 189, 201 (3d Cir. 2001), *citing Strickland*, 466 U.S. at 695. Here, Roten's complaint about counsel's failure to involuntariness of his guilty plea due to use of prescription medication issue on appeal failed under *Strickland's* prejudice prong.

Determination of prejudice is necessarily dependent on a review of the merits of Roten's guilty plea claim. *See, e.g., Beck v. Angelone*, 261 F.3d 377, 393 (4th Cir. 2001). If Roten's allegations were insufficient to show a denial of his motion to withdraw his guilty plea due to use of prescription medication, then he was not prejudiced by allegedly deficient performance of counsel in failing to raise the issue on appeal. *Id*. Roten's plea

8

colloquy, as well as the Superior Court's express finding that Roten was not under the influence of any drugs at the time he entered his plea, prevents any finding of prejudice on the part of counsel for failing to raise a non-meritorious issue on direct appeal. *See Cody v. United States*, 249 F.3d 47, 54 (1st Cir. 2001) (petitioner's failure to offer proof that a prescribed dose of medication has the potential to render one incompetent to plead guilty and failure to offer proof that he was actually laboring under such effect at the time of his plea precludes a finding of prejudice). Roten has not identified what prescription medication he was taking at the time of his plea, nor has he alleged that the medication rendered him incompetent to enter his guilty plea. *See, e.g., Thirkield v. Pitcher*, 199 F.Supp.2d 637, 653 (E.D. Mich. 2002). The decision of the state courts as to this claim of ineffective assistance was a reasonable application of *Strickland* and *Lockhart*.

Roten has alleged that a conflict of interest existed that prohibited his counsel from raising the medication issue on appeal from the motion to withdraw his guilty plea. *See Pet. for writ of habeas corpus, at 8*. Roten has not, however, alleged that coercion on the part of his attorney. Instead Roten claims that his counsel refused to raise the prescription medication issue. Counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant or suggested by the record. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). An attorney's failure to present a meritless issue on appeal cannot constitute ineffective assistance of counsel. *See, e.g., Diggs v. Owens*, 833 F.2d 439, 446 (3d Cir. 1987). In order for Roten to establish ineffective assistance of counsel due to a conflict of interest in the context of a guilty plea, he must show that there was an actual conflict of interest and that the conflict adversely affected the voluntary nature of his guilty plea. *See Hill*, 474 U.S. at 59. Because Roten cannot show

prejudice in the context of his alleged use of prescription medications, it is unnecessary to address the first prong. *Cf., Guzman v. Sabourin*, 124 F.Supp.2d 828, 831, 835-36 (S.D.N.Y. 2000) (defendant informed the court during plea colloquy that he was under the influence of prescription medications, later moved to withdraw his guilty plea, and counsel was placed in the position of defending his representations to the court that the defendant's plea was knowing, intelligent and voluntary, thus creating a conflict of interest). Here, Roten never informed the court that he was under the influence of any drugs at the time of his plea. Superior Court found that Roten was an experienced criminal who was well-acquainted with the plea-negotiation process. Superior Court did not observe any behavior on Roten's part that suggested that Roten did not understand the ramifications of his guilty plea. Roten's plea bargain spared him a potential mandatory life sentence had he been convicted on the charge of attempted murder in the first degree, as well as a substantial number of years on the other charges in the indictment. Roten has never professed his innocence, and he has failed to demonstrate how he has been prejudiced by counsel's failure to raise on appeal the issue of prescription medication and the voluntariness of his guilty plea.

     3. Roten raised his third claim, that Superior Court failed to define "drugs" during the plea colloquy, in a motion for post-conviction relief, and presented the claim to the Delaware Supreme Court on appeal from the denial of his motion for post-conviction relief. Therefore, Roten exhausted this claim. Despite having raised the claim, the Delaware Supreme Court did not address that claim on its merits. This Court therefore reviews Roten's third ground for relief *de novo. See, e.g., Hameen v. State of Delaware*, 212 F.3d 226, 247 (3d Cir. 2000). Although Roten asserts that Superior

10

Court's failure to define "drugs" rendered his guilty plea involuntary, his claim does not satisfy the relevant constitutional standard for analysis of a guilty plea. In *Bradshaw v. Stumpf*, 545 U.S. 175 (2005), and *Boykin v. Alabama*, 395 U.S. 238, 243 (1969), the United States Supreme Court set forth the constitutional minima necessary to render a guilty plea valid: an awareness of the nature of the charges against the defendant, and a knowing and voluntary waiver (1) of the Fifth Amendment privilege against self-incrimination, (2) the right to trial by jury, and (3) the right to confront one's accusers. The trial judge discharges that function when "he leaves a record adequate for any review that may be later sought. *Boykin*, 395 U.S. at 244.

The following colloquy took place at Roten's guilty plea after Roten's counsel first recited the substance of the plea agreement:

The Court: How are you today?

The Defendant: I'm fine, sir.

The Court: Have you had enough time to go over your case with Mr. Nutter?

The Defendant: Yes, sir.

The Court: Are you satisfied with the legal representation?

The Defendant: Yes, sir.

The Court: Sir, I ask people this: are you able to read?

The Defendant: Yes, sir.

The Court: I have a plea agreement, a truth-in-sentencing form, and an immediate sentencing form. Did you read each of these three documents?

The Defendant: Yes, sir.

The Court: Did you sign them?

The Defendant: Yes, sir.

The Court: Did Mr. Nutter explain the information in these forms to you?

The Defendant: Yes, sir.

The Court: The checkmarks in the truth-in-sentencing guilty plea form, are these your checkmarks?

The Defendant: Yes, sir.

The Court: Is the information that you provided in each of these three forms true?

The Defendant: Yes, sir.

The Court: You also heard Mr. Nutter, what Mr. Nutter had to say to me?

The Defendant: Yes, sir.

The Court: Is what he said, was it accurate?

The Defendant: Yes, sir.

The Court: Nobody can force you to plead guilty, because when you plead guilty, you incriminate yourself, you lose your valuable trial and appellate rights and expose yourself to the penalties of law; do you understand that?

The Defendant: Yes, sir.

The Court: Is anybody forcing you or making you plead guilty here this morning?

The Defendant: No, sir.

The Court: You are presumed innocent. The State is required to prove the case against you beyond a reasonable doubt; do you understand that?

The Defendant: Yes, sir.

The Court: You have the right to a speedy and public trial; do you understand that?

The Defendant: I do, yes, sir.

The Court: You have the right to a trial by jury, do you understand that?

The Defendant: Yes, sir.

The Court: For a jury trial, you help select the jury. All 12 jurors have to agree unanimously either for guilt or innocence; do you understand that?

The Defendant: Yes, sir.

The Court: You have the right to hear and question the witnesses against you; do you understand that?

The Defendant: Yes, sir.

The Court: You have every legal and moral right to remain silent and require the State to prove the case against you beyond a reasonable doubt. Of course, you have the right to present evidence in your defense; do you understand that?

The Defendant: Yes, sir.

The Court: You have the right to testify or not testify, as you might choose; do you understand that?

The Defendant: Yes, sir.

The Court: If you choose not to testify, the jury will be told not to take it against you because that is the exercise of your valuable constitutional right; do you understand that?

The Defendant: Yes, sir.

The Court: If you had a bad day and lost, you can appeal to the Supreme Court and ask the Court to reverse it, but you will lose that right of appeal; do you understand that?

The Defendant: Yes, sir.

The Court: The penalties you are looking at—I'm not trying to frighten you. You have to understand what the penalties are, what your exposure is. On the assault in the first degree, the minimum period of jail time required is two years. You can get as much as 25 years; do you understand that?

The Defendant: Yes, sir.

The Court: The aggravated menacing you can get as much as five years; do you understand that?

The Defendant: Yes, sir.

The Court: Do you understand you will have a presentence report? The report will be rather involved as far as you, your background, your record, the nature of the crime. You will come back for sentencing. At sentencing, you could get, if you had a bad day in front of a judge, a judge can put [you] in jail for 30 years, the first two years being a minimum-mandatory period of imprisonment; do you understand that?

The Defendant: Yes, sir.

The Court: The guidelines call for up to ten years on the assault, the aggravated menacing is 15 months. You are exposed to 30 years; do you understand that?

The Defendant: Yes, sir.

The Court: Did Mr. Nutter—from what he indicated, you reviewed video here today?

The Defendant: Yes, sir.

The Court: He went over the other evidence in the case as well?

The Defendant: Yes, sir.

The Court: Do you understand what the charge of assault in the first degree is a lesser-included offense of the attempted murder?

The Defendant: Yes, sir.

The Court: Do you understand what the charge of aggravated menacing is in Count 3?

The Defendant: Yes, sir.

The Court: Any questions from me?

The Defendant: No sir.

The Court: Drawing your attention to Count 2, do you admit you committed the lesser included offense of assault in the first degree on January 7, 2004?

The Defendant: Yes, sir.

The Court: And drawing your attention to Count 3, do you admit you committed the offense of aggravated menacing as they charge you on January 7, 2004?

The Defendant: Yes.

The Court: All right. You are making a voluntary decision, a knowing and intelligent waiver of your rights as well. What I will do is set this down for a presentence report and have sentencing—what date?

The Clerk: September the 24th at 11:00 o'clock, your Honor.

The Court: Okay. September 24th at eleven. Thank you.

The Defendant: Thank you, Your Honor.

The Court: Of course, bail is revoked. He is remanded to the custody of the Department of Corrections because he has that two-year term, at least, to do.

*See* App'x to Appellant Op. Br., No. 464, 2004, at A-7-13. This extensive recorded colloquy, in connection with the written indictment, written plea agreement, and written truth-in-sentencing guilty plea form, unquestionably satisfy the constitutional requirements for a valid guilty plea. *See* App'x to Appellant Op. Br., No. 464, 2004, at A-7-13. A-3-5; App'x to State's Ans. Br., No. 464, 2004, at B-1-2. Roten's assertion that a trial judge must define "drugs" as part of the plea colloquy is not set forth in any decision of the United States Supreme Court. *See McChesney v. Henderson*, 482 F.2d 1101, 1106 (5th Cir. 1973) (*Boykin* does not mandate a specific articulation of the three constitutional rights to be give the accused at the time of a guilty plea); *Wade v. Coiner*, 468 F.2d 1059, 1061 (4th Cir. 1972) ("A catechism of the constitutional rights that are waived by entry of a guilty plea is not compelled by the Constitution"). Roten's responses established that he understood the nature of the charges and the implications of pleading guilty. His written answer on the guilty plea form, that Roten confirmed orally during the plea colloquy, that he was not under the influence of alcohol or drugs, gave the Superior Court a firm basis for concluding that Roten was not under the immediate influence of any drug such that his comprehension or judgment could be materially distorted. *See, e.g., United States v. Morisette*, 429 F.3d 318, 322-23 (1st Cir. 2005); *United States v. Hoffenberg*, 169 F.R.D. 267, 275 (S.D.N.Y. 1996), *aff'd*, 164 F.3d 620 (2d Cir. 1998).

Roten pled guilty to avoid an almost certain life sentence, not because Superior Court failed to define the meaning of "drugs." The physical evidence of the beating that Roten inflicted on Downes was overwhelming. Downes was a credible and cooperative witness. The very weight of the evidence against Roten prompted him to plead guilty and

avoid the real possibility of a sentence that, in all probability, would have incarcerated him for the balance of his life. His claim that his guilty plea was involuntary is belied by the extensive record. Roten's guilty plea fully complied with United States Supreme Court precedent, and his third ground for relief should therefore be denied.

Conclusion

Based on a review of the Superior Court docket, it appears that the following transcripts have been prepared: August 6, 2004 guilty plea colloquy; September 24, 2004 sentencing; and March 11, 2005 hearing concerning possible self-representation on direct appeal. In the event that the Court deems production of these transcripts necessary, Respondents anticipate that production of such transcripts would require 90 days from the date an order by this Court. For the foregoing reasons, the petition for a writ of habeas corpus should be dismissed without further proceedings.

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

/s/ Gregory E. Smith
Gregory E. Smith, I.D. No. 3869
Deputy Attorney General
820 North French Street, 7th Floor
Carvel State Building
Wilmington, Delaware 19801
(302) 577-8398

Dated: December 4, 2007

## CERTIFICATION OF SERVICE

The undersigned certifies that on December 4, 2007, he electronically filed the attached *Answer* with the Clerk of Court using CM/ECF. The undersigned further certifies that on December 5, 2007 that he mailed by United States Postal Service the document(s) to the following non-registered participant:

Benny Ray Roten
SBI No. 520385
Sussex Correctional Institution
P.O. Box 500
Georgetown, Delaware  19947

        STATE OF DELAWARE
        DEPARTMENT OF JUSTICE

        /s/  Gregory E. Smith
        Gregory E. Smith, ID # 3869
        Deputy Attorney General
        820 North French Street, 7th Floor
        Carvel State Building
        Wilmington, Delaware 19801
        (302) 577-8398